**In re Anonymous No. 24 D.B. 84**

Disciplinary Board Docket no. 24 D.B. 84.

PARIS, *Member,* December 11, 1991—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## HISTORY OF PROCEEDINGS

Petitioner, [ ], was disbarred by Supreme Court order dated March 30, 1984. Petitioner was disbarred following his March 8, 1984, statement of resignation, which he tendered to the Pennsylvania Supreme Court in accordance with Rule 215, Pa.R.D.E. Petitioner submitted his request for resignation after the Office of Disciplinary Counsel alleged he had engaged in acts of misconduct essentially involving misuse of clients funds and neglect during a time period between 1982 and 1983.

On November 27, 1989, petitioner filed a petition for reinstatement and reinstatement questionnaire.

The matter was referred to Hearing Committee [ ], chaired by [ ], Esquire, [ ], Esquire and [ ], Esquire.

On September 12, 1990, a hearing was held on petitioner's request for readmission to the bar of the Supreme Court of Pennsylvania.

The Hearing Committee [ ] filed its report on December 13, 1990, and unanimously recommended that the petition for reinstatement be granted. No exceptions to the Hearing Committee report were filed.

On January 22, 1991, the Disciplinary Board of the Supreme Court of Pennsylvania remanded this matter

to Hearing Committee [ ] for consideration of the *Keller* threshold issue as set forth in the *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986).

On March 11, 1991, Hearing Committee [ ] filed its amended report and unanimously recommended that the petition be granted. No exceptions to the Hearing Committee report were filed.

The matter was adjudicated at the April 10, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

(1) Petitioner is a 40-year-old resident of [ ] who was admitted to the bar of the Supreme Court of Pennsylvania in 1976.

(2) Petitioner was disbarred on consent pursuant to Rule 215, Pa.R.D.E., March 30, 1984.

(3) Petitioner voluntarily resigned from the Pennsylvania bar pending investigations into allegations that he had been guilty of misconduct made known to him by service of letters of inquiry.

(4) In 1979, the petitioner experienced several personal tragedies. His father, with whom petitioner was close, passed away suddenly from a heart attack. During this time, both Judge [A], with whom petitioner had become friendly, and his grandmother also passed away.

(5) Petitioner's personal problems, according to the evidence presented to the committee, began shortly after his father's death.

(6) In the early 1980s, petitioner began using cocaine and eventually used cocaine on a daily basis.

(7) In the early 1980s, petitioner also began to gamble.

(8) In the year 1983, petitioner's activities essentially centered around cocaine, and he was using cocaine every day.

(9) Petitioner for the years 1982 and 1983 was involved in several acts of misconduct such as failing to account for monies received from the sale of a client's property, the failure to carry out an escrow agreement after fulfillment of the only condition for release of the escrow funds, failure to remit to a client sums of money received by the petitioner for the client and six instances where the petitioner commingled a client's funds with his own and utilized those funds for his own personal use.

(10) Petitioner repaid all sums owed to his clients by borrowing money through the assistance of friends and by taking out a second mortgage on his home.

We also adopt the following facts found by the hearing committee and supported by the evidence:

(11) The petitioner testified that he subsequently went for inpatient treatment at [ ] Institute for his drug addiction on or about February 14, 1984. The petitioner testified that he subsequently completed that inpatient program.

(12) The petitioner then testified that he completed two years of outpatient group therapy through the [ ] Program.

(13) The petitioner testified that he also has attended Narcotics Anonymous periodically.

(14) The petitioner testified he continued to treat on a weekly basis with Dr. [B] from 1984 until sometime in April of 1989 for a period of approximately five and a half years.

(15) The petitioner presented exhibit R-1, which was a letter dated April 15, 1986 from the [ ] Program indicating he had successfully completed two years of outpatient treatment.

(16) The petitioner introduced exhibit R-2 which was the stipulation of Dr. [B] which reads as follows:

"Dr. [B] will testify that he treated [petitioner] for his cocaine addiction for approximately four and a half years. He will testify that [petitioner], to the best of his knowledge, has not returned to using cocaine and has not gambled in any fashion. He will further indicate that [petitioner], to his knowledge, has attended support groups regularly and has attended therapy regularly and has made progress in his therapy. Dr. [B] will testify that he does not see any mental or emotional reasons why [petitioner] would be unable to return to the practice of law."

(17) The witnesses presented, including [C], Esq., testified that, to their knowledge, petitioner has not used drugs since January of 1984 nor has he engaged in any gambling activities since that date.

(18) Petitioner offered evidence that he has maintained his knowledge of the law by accompanying [C] to court, on a regular basis, and, further, by reviewing pertinent statutes and legislative services, the [ ], court opinions and advance sheets in his area of practice (landlord/tenant and basic real estate work). Petitioner also offered evidence that he took the courses which

are required by the Disciplinary Board of the Supreme Court of Pennsylvania by purchasing and receiving course tapes and as evidence thereof produced the receipt for the purchase of the appropriate continuing education materials. Petitioner also testified that he in fact listened to the tapes.

(19) During the time of his disbarment, petitioner regularly filed income tax returns on which he claimed to have reported all of his income to the best of his knowledge and made these returns available to the Office of Disciplinary Counsel.

(20) Since his disbarment, petitioner has served as a court arbitrator for which he is compensated, and that the matters which he hears are matters assigned by the trial commissioner which were originally private criminal complaints and ultimately referred to an arbitrator to resolve the differences.

(21) While serving as an arbitrator, the evidence presented suggests that petitioner never held himself out as an attorney and that there is no requirement that the arbitrator be an attorney.

(22) The evidence presented also indicated that petitioner has never been disciplined or suspended for his role as a court arbitrator.

(23) Petitioner, in his capacity as a lay person, also assisted the Court Rules Committee in developing new court rules.

(24) The petitioner testified that, if he is reinstated to the practice of law, it is his present hope to continue to work with [C], Esq. in the area of landlord/tenant law.

(25) With respect to the conduct that led to petitioner's resignation, the petitioner has demonstrated remorse for his misconduct and candidly told the committee how he let down [C], his family and the members of the legal profession by his misconduct. The petitioner also stated that since his disbarment, he has tried to do everything he can to change himself. Further, the petitioner testified that he has not used drugs or gambled since early 1984, and he has no intention to ever engage in such conduct in the future. If reinstated, petitioner claims he would like to participate with committees that are presently established to help other lawyers who have similar problems.

## CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude consideration of the instant petition for reinstatement.

(2) Petitioner has sustained his burden of proving, by clear and convincing evidence, that he possesses the moral qualifications, competency and legal learning necessary to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner's resumption of the practice of law will not be detrimental to the integrity of the law, nor subversive of the interests of the public.

## DISCUSSION

The question of petitioner's reinstatement involves determining whether petitioner's conduct which resulted in his disbarment was so egregious as to prevent his reinstatement at this juncture.

Such a determination also involves a consideration of whether a sufficient length of time has transpired since petitioner committed his acts of misconduct and during which time petitioner engaged in a qualitative period of rehabilitation. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

If petitioner's conduct is such that it will not prevent a consideration of his request for reinstatement, then the board must determine whether petitioner possesses the requisite moral qualifications and learning in the law to merit readmission to the Pennsylvania bar. Rule 203, Pa.R.D.E. It is the petitioner's burden to prove by clear and convincing evidence that he has the requisite moral qualifications and learning in the law to enable him to resume practice in the Commonwealth of Pennsylvania and moreover that such a resumption of the practice of law by petitioner would not be detrimental to the integrity of the bar, nor subvert the interest of the public. Rule 218(c)(3)(i), Pa.R.D.E.

Petitioner's request for reinstatement requires "a review of the underlying offense ... as an initial step in determining eligibility for reinstatement." *Office of Disciplinary Counsel v. [D],* 4 D.B. 76 at 4.

The [D] case is cited for the proposition that there are certain acts of misconduct so offensive to the integrity of the bar and contrary to public interest that no period of time nor course of rehabilitation can ameliorate the injustice which would be caused by petitioner's reinstatement.

Is petitioner's conduct of such a nature as that proscribed by [D]? It is not. While petitioner's conduct is unacceptable, petitioner's acts of misconduct such

as failing to account for monies received from the sale of a client's property, the failure to carry out an escrow agreement, the failure to remit to a client sums of money received by the petitioner for the client and commingling of clients' funds with his own and utilizing those funds for his own personal use are not so egregious as to prevent a consideration of his reinstatement. In each instance of misconduct, the harmed parties were reimbursed for their losses. Pennsylvania case law involving reinstatement to practice supports the conclusion that petitioner's conduct should not preclude his reinstatement, such as *Office of Disciplinary Counsel v. [E]*, 26 D.B. 81, 7 D.&C.4th 260 (1990), where an attorney disbarred for delivering a bribe to a public official, giving false testimony under oath after being granted immunity, failing to make appropriate disclosures to a federal grand jury and "laundering" checks for a public official was subsequently reinstated; *In re [F]*, 49 D.&C.3d 298 (1986) where an attorney convicted for making materially untrue statements to the Office of Housing and Urban Development, and for fraudulent lot sales and mail fraud was reinstated; *Office of Disciplinary Counsel v. [D]*, Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989), where an attorney voluntarily withdrew from the bar after he had handled clients' matters unsatisfactorily and then was later readmitted. These cases support the conclusion that petitioner's misconduct was not so inherently offensive as to preclude his readmission to practice.

A second question which the Disciplinary Board must consider is whether a quantitative period of time has elapsed since petitioner's disbarment during which he has engaged in qualitative rehabilitation. *Office of Dis-*

*ciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986); *Office of Disciplinary Counsel v. [D],* Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989).

Petitioner has been removed from the practice of law in Pennsylvania since March 30, 1984, a period of over seven years. During this period of time petitioner has engaged in qualitative rehabilitation during which he sought treatment for his cocaine addiction and gambling. There is sufficient evidence in the record that petitioner has not used drugs or gambled since 1984. Since petitioner has engaged in a meaningful and long effort to rehabilitate himself, his present reinstatement would *not* pose a threat to the integrity of the bar nor the interest of the public. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986); In re [E], 49 D.&C.3d 298 (1986); and Rule 218(c)(3)(i), Pa.R.D.E.

Rule 218(c)(3)(i), Pa.R.D.E. also require that the petitioner must demonstrate by clear and convincing evidence that he has the requisite moral qualifications and learning in the law required in Pennsylvania; and that his resumption of the practice of law will not subvert the interest of the public nor compromise the integrity of the bar.

Pennsylvania case law on this point establishes that the petitioner may prove moral qualifications through the introduction of favorable character testimony by well-respected sources. *Office of Disciplinary Counsel v. [D],* Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557; *In re [E]* 49 D.&C.3d 298 (1986).

Petitioner presented uncontroverted favorable character witnesses at the hearing on the petition for re-

instatement. This testimony, the fact that petitioner has not suffered from the addictions that lead to his disbarment for more than seven years; petitioner's demonstrated remorse for his misconduct and his willingness to assist other lawyers with similar problems amply demonstrate that petitioner has the requisite moral qualifications required by Rule 218.

Following his disbarment, petitioner began to work as a paralegal under the aegis of [C], Esq. Petitioner maintained his knowledge of the law by regularly accompanying [C] to court and by reviewing pertinent statutes and legislative services, the [ ], court opinions and advance sheets in his area of practice. He also acted as a arbitrator during this time. These efforts over a seven-year period and petitioner's conduct as it relates to his professional qualifications more than demonstrate that petitioner has the necessary learning in the law required by a member of the Pennsylvania bar.

Since petitioner has fulfilled the requirements of Rule 218, Pa.R.D.E. and satisfied the requirement of *Keller,* petitioner should be reinstated and his resumption of the practice of law will not affect the public or the bar adversely.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that the petition for reinstatement of [petitioner] to practice law in the Commonwealth of Pennsylvania be granted.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the nec-

essary expenses incurred in the investigation and processing of said petition for reinstatement.

Mr. Hill and Ms. Lieber did not participate in the adjudication.

## ORDER

And now, December 11, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated July 16, 1991, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.